```
                              UNITED STATES DISTRICT COURT
                                DISTRICT OF CONNECTICUT

------------------------------x
                              :
THE TRAVELERS INDEMNITY       :    Civ. No. 3:21CV00909(SALM)
COMPANY                       :
                              :
v.                            :
                              :
ALTO INDEPENDENT SCHOOL       :    July 28, 2022
DISTRICT, GRAPELAND           :
INDEPENDENT SCHOOL DISTRICT,  :
and GUSTINE INDEPENDENT       :
SCHOOL DISTRICT               :
                              :
------------------------------x
```

**RULING ON AMENDED PETITION TO COMPEL ARBITRATION [DOC. #23]**

Petitioner The Travelers Indemnity Company ("Travelers" or "petitioner") has filed an Amended Petition to Compel Arbitration. See Doc. #23. Respondents Alto Independent School District ("Alto"), Grapeland Independent School District ("Grapeland"), and Gustine Independent School District ("Gustine"), have filed a joint response to the petition, see Doc. #27, Doc. #28, to which Travelers has filed a reply. See Doc. #37. For the reasons stated herein, Travelers' Amended Petition to Compel Arbitration [**Doc. #23**] is **DENIED**.

**I.  Background**

Travelers brought this "action to compel arbitration pursuant to Section 4 of the Federal Arbitration Act ('FAA')[]" on July 2, 2021. Doc. #1 at 1.

Travelers "is a corporation organized under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut." Doc. #23 at 1.

Respondents are Texas school districts, see id. at 1, each of which "obtained first-party property insurance coverage from the Texas Rural Education Association Risk Management Cooperative ('TREA'), providing coverage for the Respondents' buildings. The terms, conditions, and exclusions of the insurance provided to each Respondent are set forth in a 'coverage document.'" Id. at 2. The Court refers to these collectively as "the Insurance Policies."

"Travelers agreed to reinsure a portion of the coverage that TREA provides to the Respondents subject to the terms, conditions, and exclusions of reinsurance contracts[.]" Id. at 3. Travelers' rights and obligations under these contracts are set forth in a Facultative Certificate. See id.

Pursuant to the Facultative Certificate, Travelers undertook the duty to investigate, adjust, and defend certain claims arising under the Insurance Policies. See Doc. #23-2 at 11. Specifically, the Facultative Certificate provides:

> Although [TREA] has the obligation and duty to investigate and defend claims or suits affecting this Reinsurance and to pursue such claims and lawsuits to a final determination, [TREA] has requested that once the claim exceeds the retention specified in the reinsurance declarations, [Travelers] assume these duties for the

> purposes of this CERTIFICATE. ... [Travelers] has assumed these duties.

Id.

The Facultative Certificate contains an arbitration provision, which states, in part:

> As a condition precedent to any right of action hereunder, any dispute between [TREA] and [Travelers] arising out of, or relating to the formation, interpretation, performance or breach of this CERTIFICATE, whether such dispute arises before or after termination of this CERTIFICATE, shall be submitted to arbitration. Arbitration shall be initiated by the delivery of a written notice of demand for arbitration sent certified or registered mail or by other carrier services providing receipt of delivery by one party to the other.

Id. at 12.

"Each of the Respondents submitted a claim or claims to TREA as a result of purported storm damage to their properties. The Respondents claim that they have not received full compensation for their alleged losses related to each claim." Doc. #23 at 3.

As a result of this dispute, "[e]ach of the Respondents filed a lawsuit ... naming both TREA and Travelers as defendants." Id. The claims set forth in each of these lawsuits are virtually identical. Compare Doc. #23-3 with Doc. #23-4 and Doc. #23-5. Each respondent "assert[s] extra-contractual claims against Travelers for alleged Violations of the Texas Insurance Code, Fraud, Conspiracy to Commit Fraud, Violations of the Texas

Deceptive [Trade] Practices Act, Misrepresentation, and Negligence." Doc. #23 at 4.

Travelers has "filed motions to dismiss or stay ... in favor of arbitration[]" in each of the underlying suits. Id. at 5. "The Texas [state trial] courts denied Travelers' motions in the Underlying Lawsuits, and Travelers ... filed interlocutory appeals." Doc. #38 at 5. "On May 25, 2022, the Texas Court of Appeals issued a Memorandum Opinion AFFIRMING the trial court's denial of the relief requested by Travelers in Alto ISD's suit." Doc. #47 at 2; see also Travelers Indem. Co. v. Alto ISD, No. 12-21-00143-CV, 2022 WL 1668859, at *6 (Tex. App. Ct. May 25, 2022).[1] On June 30, 2022, the Twelfth Court of Appeals for the State of Texas dismissed Travelers' appeal against Grapeland for lack of jurisdiction because "the record does not show that a decision on Travelers's motion was announced orally in open court or by memorandum filed with the clerk[.]" Travelers Indem. Co. v. Grapeland ISD, No. 12-21-00204-CV, 2022 WL 2374403, at *1 (Tex. App. Ct. June 30, 2022). Travelers' appeal in the Gustine case remains pending. See Doc. #47 at 2.

---

[1] Travelers filed a Motion for Rehearing of this decision on June 24, 2022. Alto ISD, No. 12-21-00143-CV, (Tex. App. Ct. June 24, 2022). The Texas Court of Appeals summarily denied Travelers' Motion for Rehearing on July 5, 2022. See Alto ISD, No. 12-21-00143-CV, (Tex. App. Ct. July 5, 2022).

On July 2, 2021, while Travelers' motions to dismiss were pending before the Texas state trial courts, Travelers filed its original Petition to Compel Arbitration in this Court. See Doc. #1. Travelers filed an Amended Petition to Compel Arbitration on September 15, 2021. See Doc. #23.[2] Respondents have filed an opposition to that petition. See Doc. #27, Doc. #28. In addition, respondents have filed a Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #24), as well as a "Motion for Abstention with Respect to and/or Dismissal of, Petition to Compel Arbitration[.]" Doc. #26 at 1.

For the reasons set forth herein, Travelers' Amended Petition to Compel Arbitration [**Doc. #23**] is **DENIED**. The denial of the Amended Petition renders respondents' Motion to Dismiss for Lack of Personal Jurisdiction [**Doc. #24**] and Motion for Abstention [**Doc. #26**] **moot,** and those motions are therefore **TERMINATED**.[3]

---

[2] Travelers' Amended Petition to Compel Arbitration is substantially similar to Travelers' original Petition to Compel Arbitration, but no longer names Mason Independent School District as a respondent. Compare Doc. #1 with Doc. #23.

[3] Respondents assert that abstention is warranted under the Colorado River doctrine. See Doc. #26. Some courts in this Circuit have held that, where a party moving to dismiss pursuant to Colorado River "also moves to dismiss on other grounds, the Court must consider the [Colorado River] motion first." Pappas Harris Cap., LLC v. Bregal Partners, L.P., No. 20CV06911(VEC), 2021 WL 3173429, at *2 (S.D.N.Y. July 27, 2021). Here, however, the Court need not reach the Colorado River argument because

## II. Legal Standard

The FAA, 9 U.S.C. §1, et seq., requires enforcement of agreements to arbitrate, embodying "'a national policy favoring arbitration.'" Nicosia v. Amazon.com, Inc., 834 F.3d 220, 228-29 (2d Cir. 2016) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011)). Still, arbitration "is a matter of consent, not coercion," and therefore the FAA "does not require parties to arbitrate when they have not agreed to do so[.]" Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478-79 (1989).

Courts follow a two-part test to determine whether a claim is subject to arbitration, considering "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011). A party seeking to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement in issue." Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (quotation marks omitted).

---

Travelers has failed to establish that the parties agreed to arbitrate their claims.

"Courts deciding motions to compel [arbitration] apply a standard similar to the one applicable to a motion for summary judgment." Starke v. SquareTrade, Inc., 913 F.3d 279, 281 n.1 (2d Cir. 2019). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the Court] may rule on the basis of that legal issue and avoid the need for further court proceedings." Id. at 288 (citation and quotation marks omitted).

### III. Choice of Law

"While the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, but not more so." Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 364 (2d Cir. 2003) (citation and quotation marks omitted) (emphasis in original). "In determining whether the parties have agreed to arbitrate -- i.e., whether an arbitration agreement has been formed -- the court applies state substantive law." Byrne v. Charter Commc'ns, Inc., --- F. Supp. 3d ---, No. 3:20CV00712(CSH), 2022 WL 138020, at *3 (D. Conn. Jan. 14, 2022); see also Cap Gemini Ernst & Young, U.S., L.L.C., 346 F.3d at 364 ("[I]n evaluating whether the parties have entered into a valid arbitration agreement, the court must look to state law principles."). To that end, "[c]ourts within this

Circuit have ... applied state-law principles to determine whether an arbitration agreement may bind, or be enforced by, nonparties." Johnston v. Electrum Partners LLC, No. 17CV07823(KPF), 2018 WL 3094918, at *5 (S.D.N.Y. June 21, 2018).

"Travelers cites Texas law in [its] memorandum, because the Respondents' property is in Texas, and the Respondents' claims in the Underlying Lawsuit included causes of action specific to Texas." Doc. #2 at 10-11 n.1. Respondents "agree Texas substantive law should be applied" to determine "the enforceability of an arbitration agreement against a nonparty/nonsignatory who has not agreed or otherwise consented to arbitration." Doc. #28-1 at 16. The Court therefore applies Texas law.

**IV. Discussion**

The Court finds that respondents are not required to arbitrate their claims. Travelers bases its Amended Petition to Compel Arbitration on the Facultative Certificate's arbitration clause. See Doc. #23. Travelers concedes that respondents were not parties to the Facultative Certificate. See Doc. #2 at 7 ("The Respondents, as the original insureds with TREA, do not have a direct contractual relationship with Travelers, the reinsurer. No contract exists between Respondents and Travelers."). Nevertheless, Travelers contends that "Respondents are subject to the arbitration clause of the Facultative

Certificates, because their claims necessarily arise out of or relate to that reinsurance contract -- absent the existence of these reinsurance contracts, they have no potential claims against Travelers." Id. at 10. Travelers relies on a theory of "direct-benefits estoppel," which it contends "applies when a non-signatory either (1) sues on the contract; or (2) otherwise seeks the direct benefits of the contract." Id. at 11.

In opposition, respondents contend that "direct-benefits estoppel does not apply, and the Texas School Districts may not be compelled to arbitrate[,]" Doc. #28 at 3, because their "claims arise[] from general obligations imposed by state law, including the Texas Insurance Code, [the Texas Deceptive Trade Practices Act], and the common law, not the TREA-Travelers Reinsurance Certificates." Doc. #28-1 at 30-31. The Court agrees.

> Direct-benefits estoppel applies to parties who seek to derive a direct benefit from a contract with an arbitration agreement. This estoppel theory precludes a plaintiff from seeking to hold the non-signatory liable based on the terms of an agreement that contains an arbitration provision while simultaneously asserting the provision lacks force because the defendant is a non-signatory. Simply put, a person cannot both have his contract and defeat it too. When a claim depends on the contract's existence and cannot stand independently -- that is, the alleged liability arises solely from the contract or must be determined by reference to it -- equity prevents a person from avoiding the arbitration clause that was part of that agreement. But when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law, direct-benefits

> estoppel is not implicated even if the claim refers to or relates to the contract or would not have arisen 'but for' the contract's existence.

Jody James Farms, JV v. Altman Grp., Inc., 547 S.W.3d 624, 637 (Tex. 2018) (citations, quotation marks, and footnotes omitted). "[W]hether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading." In re Weekley Homes, L.P., 180 S.W.3d 127, 131-32 (Tex. 2005).

Where, as here, the Court addresses a question of Texas state law, the Court must "apply [Texas] law as the [Texas Supreme Court] would apply it." Goodlett v. Kalishek, 223 F.3d 32, 36 (2d Cir. 2000). Absent a clear directive from a state's highest court, a federal court must "predict how the state's highest court would resolve the uncertainty or ambiguity." Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 499 (2d Cir. 2020) (citation and quotation marks omitted). In doing so, the federal court "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." V.S. v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010).

This Court need not predict how Texas appellate courts would address this issue, because the Texas Court of Appeals has already held that Alto is not bound by the Facultative Certificate's arbitration provision. See Travelers Indem. Co.,

2022 WL 1668859, at *6. Indeed, the Texas Court of Appeals specifically determined that direct-benefits estoppel did not apply to Alto's claims against Travelers. In making that determination, the Texas Court of Appeals stated:

> Alto ISD alleges it was damaged by receiving an inappropriate settlement for its claims under the Policy -- not the Reinsurance Contract, and that Travelers's liability, if any, is premised on insurance code, tort, and DTPA duties that are general, noncontract obligations arising from its role as the adjuster of the claims under the Policy -- not the reinsurer of TREA's liability under the Reinsurance Contract. Accordingly, we conclude Travelers has not carried its burden of establishing that direct benefits estoppel applies in this case.

Id.

This analysis applies to each of the respondents' claims. Travelers concedes that "[a]lthough the specific allegations of each underlying petition vary based on the particulars of the individual Respondents' insurance claims, they share the same overarching allegations." Doc. #2 at 13. The Court finds no meaningful difference in the analysis as to Grapeland and Gustine. Accordingly, the reasoning behind the Texas Court of Appeals' determination that Alto is not required to arbitrate its claims applies with equal force to each of the respondents' claims.

This Court agrees with the Texas Court of Appeals' analysis. Respondents do not assert claims against Travelers for breach of contract. See Doc. #23-3; Doc. #23-4; Doc. #23-5.

Instead, they bring claims for "alleged Violations of the Texas Insurance Code, Fraud, Conspiracy to Commit Fraud, Violations of the Texas Deceptive [Trade] Practices Act, Misrepresentation, and Negligence." Doc. #23 at 4. Such claims "arise[] from general obligations imposed by state law, including statutes, torts and other common law duties[.]" Jody James Farms, JV, 547 S.W.3d at 637 (citation and quotation marks omitted).

Travelers nevertheless contends that direct-benefits estoppel applies because "[t]he Respondents cannot directly seek benefits related to or arising from the Facultative Certificates (or enforce obligations that it contends that the Facultative Certificates impose on Travelers) and then disclaim the arbitration clause in those very same contracts." Doc. #2 at 11. In Travelers' view, respondents "artfully plead their claims to make them sound as if Travelers' alleged liability arises from general obligations imposed on those engaged in the business of insurance under the Texas Insurance Code and the common law." Doc. #37 at 3-4. Whatever the causes of action actually pled in the Texas complaints, Travelers asserts that direct-benefits estoppel applies because the substance of respondents' claims "depends on, and cannot be determined without reference to, Travelers' obligations under the Facultative Certificate." Id. at 1.

To support this argument, Travelers points to Alto's allegations that Travelers: (1) "fail[ed] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims, even though Defendants TREA and Travelers['] liability under the policy was reasonably clear," Doc. #23-3 at 9; (2) "[f]ail[ed] to promptly provide Plaintiff a reasonabl[e] explanation ... for Defendants TREA and Travelers['] denial of a claim or offer of a compromise settlement of a claim[,]" id. at 11; (3) "fail[ed] within a reasonable time to affirm or deny coverage of Plaintiff's claims[,]" id. at 9; (4) "refus[ed] to pay Plaintiff's claims without conducting a reasonable investigation[,]" id. at 10; and (5) knowingly and recklessly made false representations regarding the handling and payment of Alto's claims, see id. at 13-14. See Doc. #37 at 4.

Travelers argues that such allegations establish that its liability must be determined by referencing the Facultative Certificate:

> To the extent that the Respondents have any rights vis-à-vis Travelers with respect to the adjustment, settlement, and payment of their claims, those rights arise directly from Travelers' obligations in the Facultative Certificate, i.e., there is a specific contractual basis for Travelers' claim-handling obligations. They do not derive from general obligations imposed on those engaged in the business of insurance under Texas law.

Id. at 4-5. The Court disagrees.

Of course, Travelers' claim-handling obligations would not have arisen if there were no Facultative Certificate. However, a "non-signatory plaintiff cannot be compelled to arbitrate on the sole ground that, but for the contract containing the arbitration provision, it would have no basis to sue." In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 740 (Tex. 2005). Thus, the mere fact that Travelers' duty to perform such obligations only came to be because of the Facultative Certificate is insufficient to invoke direct-benefits estoppel. See Weekley Homes, L.P., 180 S.W.3d at 132 ("While [defendant's] duty to perform those repairs arose from the Purchase Agreement, a contractor performing repairs has an independent duty under Texas tort law not to injure bystanders by its activities, or by premises conditions it leaves behind." (footnotes omitted)).

Indeed, "direct-benefits estoppel does not apply simply because the claim refers to the contract." Jody James Farms, 547 S.W.3d at 638 (citation, quotation marks, and footnote omitted).

> Instead, the party must seek to derive a direct benefit -- that is, a benefit that stems directly -- from that contract. The claim must depend on the existence of the contract, and be unable to stand independently without the contract. The alleged liability must arise solely from the contract or must be determined by reference to it.

G.T. Leach Builders, LLC v. Sapphire V.P., LP, 458 S.W.3d 502, 527-28 (Tex. 2015) (citations and quotation marks omitted).

Travelers' alleged liability does not "arise solely from the" Facultative Certificate, and need not "be determined by reference to" the Facultative Certificate. Id. Respondents do not argue that Travelers "breached any specific provision of the [Facultative Certificate] or that" Travelers did not handle respondents' claims "in accordance with the [Facultative Certificate]." Taylor Morrison of Tex., Inc. v. Ha, No. 14-20-00749-CV, 2021 WL 6050648, at *6 (Tex. App. Ct. Dec. 21, 2021). Travelers' liability is instead "premised on insurance code, tort, and DTPA duties that are general, noncontract obligations[.]" Travelers Indem. Co., 2022 WL 1668859, at *6. Such duties are separate and distinct from any potential breach of contract. See Barbara Techs. Corp. v. State Farm Lloyds, 589 S.W.3d 806, 825 (Tex. 2019)("A breach of contract claim, however, is distinct and independent from a claim that an insurer violated the Insurance Code."); see also USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 489 (Tex. 2018) ("An insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties.").

Travelers points to several allegations in Alto's Complaint to support its argument that direct-benefits estoppel applies. See Doc. #37 at 4. But these allegations suggest that Travelers'

~ 15 ~

potential <u>liability</u> arises from obligations that are separate and distinct from the Facultative Certificate. For example, Alto asserts that Travelers violated the Texas Insurance Code by "refusing to pay Plaintiff's claims without conducting a reasonable investigation[.]" Doc. #23-3 at 10. While Travelers' <u>duty</u> to investigate respondents' claims arises under the Facultative Certificate, Travelers' <u>liability</u> is determined by examining whether it conducted a "reasonable investigation with respect to the claim" under the Texas Insurance Code. <u>See</u> Tex. Ins. Code §541.060(a)(7).

Similarly, Alto alleges that Travelers violated the Texas Insurance Code by "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims, even though ... Travelers['] liability under the policy was reasonably clear[.]" Doc. #23-3 at 9. Here too, Travelers' duty to "effectuate a prompt, fair, and equitable settlement" of the claims arises not from the Facultative Certificate, but from the Texas Insurance Code. Tex. Ins. Code §541.060(a)(2). This conclusion is not altered by Alto's reference to "liability under the policy" in its complaint. Doc. #23-3 at 9. As the Texas Court of Appeals explained: "The petition excerpts [Travelers] cites as evidence that Alto ISD is seeking insurance funds from Travelers, especially when taken in context of the petition as a whole, show that Alto ISD alleges it was damaged

by receiving an inappropriate settlement for its claims under the Policy -- not the Reinsurance Contract[.]" Travelers Indem. Co., 2022 WL 1668859, at *6. As a result, Travelers' liability does not depend on the terms of the Facultative Certificate. Rather, it is premised upon the Texas Insurance Code and the Insurance Policies.

This analysis is not altered by Travelers' argument that "[e]ach of the Respondents alleges that it submitted an insurance claim to TREA, which was reinsured by Travelers, and that TREA **and Travelers have failed to pay its claims in full**." Doc. #37 at 5 (emphases in original).[4] Direct-benefits estoppel does not apply merely because the claimed "measure of loss ... equates to the amount of a contract loss[.]" Jody James Farms, JV, 547 S.W.3d at 638. As the Texas Court of Appeals recognized when addressing Alto's complaint:

> Alto ISD has no rights under the Reinsurance Contract. Without contractually mandated rights, Alto ISD would be

---

[4] Travelers relies on Weekley Homes, L.P., 180 S.W.3d at 131-32, and Ace Am. Ins. Co. v. Huntsman Corp., 255 F.R.D. 179 (S.D. Tex. 2009), to support this argument. See Doc. #2 at 12-13. However, in each of those cases, the party seeking to avoid arbitration both sought and obtained substantial benefits under the contract before initiating the litigation. See Weekley Homes, L.P., 180 S.W.3d at 133; Ace Am. Ins. Co., 255 F.R.D. at 206. Such cases provide little guidance here because "Travelers alleges only that [respondents are] seeking benefits of the Reinsurance Contract through [their] claims in the lawsuit, not that [they] sought and obtained substantial benefits of the [Reinsurance C]ontract apart from the litigation." Travelers Indem. Co., 2022 WL 1668859, at *5.

> unable to maintain a contract claim against Travelers
> under the Reinsurance Contract even if it were inclined
> to do so. Therefore, instead of enforcing expectations
> created by the Reinsurance Contract, any liability of
> Travelers is necessarily extracontractual, and direct
> benefits estoppel is not shown.

Travelers Indem. Co., 2022 WL 1668859, at *4. It is thus irrelevant whether the damages respondents seek are identical to the measure of respondents' contract loss, because respondents' claims are not premised on the Facultative Certificate.

In sum, Travelers has failed to establish that direct-benefits estoppel applies because it has not shown that respondents' claims "arise[] solely from the contract or must be determined by reference to it[.]" Jody James Farms, JV, 547 S.W.3d at 637 (citation, quotation marks, and footnote omitted). Because direct-benefits estoppel does not apply, Travelers has not shown that "the parties have entered into a valid agreement to arbitrate[.]" In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d at 128. In the absence of such an agreement, this Court lacks the authority to compel arbitration. Travelers' Amended Petition to Compel Arbitration [**Doc. #23**] is therefore **DENIED.**

V.  Conclusion

Thus, for the reasons stated, Travelers' Amended Petition to Compel Arbitration [**Doc. #23**] is **DENIED**. The denial of the Amended Petition renders respondents' Motion to Dismiss for Lack

of Personal Jurisdiction [**Doc. #24**] and Motion for Abstention [**Doc. #26**] **moot,** and those motions are therefore **TERMINATED.**

The Clerk shall close this case.

It is so ordered at Bridgeport, Connecticut, this 28th day of July, 2022.

                                       /s/
                                    HON. SARAH A. L. MERRIAM
                                    UNITED STATES DISTRICT JUDGE